1  Paul A. Tyrell (Bar No. 193798)
   B. Allison Borkenheim (Bar No. 230318)
2  PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
   530 B Street, Suite 2100
3  San Diego, California 92101
   Telephone: (619) 238-1900
4  Facsimile: (619) 235-0398

5  Attorney for Plaintiff
   The Gerson Institute, a California non-profit organization
6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10 THE GERSON INSTITUTE, a California non-     Case No. 09 CV 1429 LAB POR
   profit organization,
11                                             COMPLAINT FOR:
            Plaintiff,
12                                             (1)  FEDERAL TRADEMARK
   v.                                               INFRINGEMENT;
13                                             (2)  LANHAM ACT VIOLATIONS
   ADAM HUNTINGTON, an individual,                  AND UNFAIR COMPETITION;
14                                             (3)  COPYRIGHT INFRINGEMENT;
            Defendants                         (4)  CONVERSION;
15                                             (5)  VIOLATION OF B&P CODE § 17200
                                               (6)  COMMON LAW UNFAIR
16                                                  COMPETITION
                                               (7)  BREACH OF DUTY OF LOYALTY
17                                             (8)  BREACH OF FIDUCIARY DUTY
                                               (9)  FRAUD; AND
18                                             (10) ACCOUNTING
19
                                               DEMAND FOR JURY TRIAL
20

21

22

23

24

25

26

27

28

                              COMPLAINT

111819/000047/1022384.06

Plaintiff The Gerson Institute, a California non-profit corporation ("Gerson"), brings this action and hereby alleges as follows:

## SUMMARY OF THE CASE

1.      This action involves a disloyal employee who took advantage of the trust placed in him by a nonprofit organization.  As set forth below, the defendant, Adam Huntington ("Huntington") was hired as a fundraising specialist by Gerson.  Rather than raise funds for Gerson, Huntington misdirected the proceeds of online sales to himself and used Gerson's trademarks and copyrighted materials to make a profit for himself, at Gerson's expense.

## JURISDICTION

2.      This action arises under Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).  Accordingly, this Court has jurisdiction of this civil action under 28 U.S.C. §§ 1331 and 1338, and over the related state causes of action under 28 U.S.C. §§ 1338(b) and 1367(a).

## VENUE

3.      Venue in this action properly lies in the Southern District of California under 28 U.S.C. §§ 1391 and 1400(a) as the Defendant has published infringing advertisements in the Southern District of California, and has derived income from product sales to the public within this judicial district which relate to the infringement claims, misappropriation claims and unfair competition claims at issue herein.

## PARTIES

4.      Gerson is a non-profit corporation organized under, and existing by virtue of, the laws of the State of California, with its principal place of business located in San Diego, California.

5.      On information and belief, Adam Huntington ("Huntington") is an individual residing in the county of San Diego, State of California.

111819/000047/1022384.06

## FACTUAL ALLEGATIONS

**Background**

6.     Plaintiff Gerson is a non-profit organization dedicated to the alternative, non-toxic treatment of disease, using the "Gerson Therapy." The Gerson Therapy is a natural treatment developed by Dr. Max Gerson in the 1920's that uses organic foods, juicing, coffee enemas, detoxification and natural supplements to activate the body's ability to heal itself. Gerson was founded by Charlotte Gerson, Max Gerson's daughter.

7.     Gerson publishes and sells books, pamphlets, brochures and newsletters which promote and educate individuals on the Gerson Therapy. These materials are copyright protected and the Gerson name is a registered trademark.

8.     Gerson's website is a multi-level resource for individuals and practitioners interested in Gerson and the Gerson Therapy. The website contains extensive content regarding Gerson and the Gerson Therapy, Gerson's history, Gerson clinics and an on-line store where individuals can purchase publications copyrighted by Gerson. The website also includes a page where individuals can make tax-deductible donations to Gerson. The website constitutes Gerson's copyrighted work.

**Gerson's Copyrighted Works**

9.     Gerson publishes and sells a number of pamphlets, and books on the Gerson Therapy. Many of Gerson's publications can be purchased and downloaded in "PDF" format from Gerson's website. The Gerson-published materials available on Gerson's website include the following materials (the "Registered Works"):

        (a)      The Gerson Therapy Handbook;

        (b)      The Little Juicing Book;

        (c)      The Little Enema Book;

        (d)      Gerson Therapy Melanoma Study;

        (e)      An Ounce of Prevention; and

111819/000047/1022384.06

1    10.    With respect to the Registered Works, Gerson has complied in all respects with 17

2    U.S.C. §§ 101, et seq.  Gerson has secured the exclusive rights and privileges to the copyrights in

3    the writings cited above by properly registering the same with the United States Copyright Office

4    (the copyrighted material is hereinafter referred to as the "Registered Works").   Gerson holds

5    Certificates of Registration from the United States Copyright Office for the Registered Works has

6    had the exclusive right to use, market, publish and sell the Registered Works.  Gerson also holds

7    copyrights in its other materials, including its newsletters which are also sold on its website.

8    11.    At all relevant times, Gerson has been the sole owner of all right, title and interest

9    in and to the copyrights in the Registered Works and its other copyrighted materials and has had

10   the exclusive right to publish, market and sell the Registered Works and its other copyrighted

11   materials.

12   12.    Additionally, Charlotte Gerson, the daughter of Gerson's founder, has written a

13   number of books on healing using the Gerson Therapy, which are copyright protected.  Charlotte

14   Gerson has granted Gerson the right to market and sell Charlotte Gerson's publications.

15   **Gerson's Trademarks**

16   13.    Gerson has developed valuable goodwill in its name and filed for federal

17   protection of the use of the mark "GERSON".  Gerson uses the GERSON mark on, among many

18   other things, its website, and promotional and business materials that are exclusive to Gerson.

19   14.    With respect to the GERSON mark, Gerson has complied in all respects with

20   15 U.S.C. §§ 1051, et seq.  Gerson has secured the exclusive rights and privileges to the mark

21   GERSON by properly registering the same with the United Patent and Trademark office

22   ("USPTO").

23   15.    The USPTO duly and lawfully issued a trademark (wordmark) for the mark "the

24   mark "GERSON," Registration No. 2,526,365 for goods and services; and "the mark

25   "GERSON," Registration No. 2,521,443 for prerecorded audiocassettes and videocassettes

26   featuring information on nutrition-based and detoxifying medical treatment for various illnesses

27   in class 9 (collectively referred to herein as the "Trademarks").   (True and correct copies of

28   Gerson's trademark registrations are attached hereto as Exhibit "A".)

111819/000047/1022384.06

16.     At all relevant times, Gerson has been the sole owner of all right, title, and interest in and to its Trademarks.  Gerson's Trademarks are used and circulate throughout the country and internationally on, among other things, Gerson's publications, advertising, business documents, packaging, products, on its web site.

**Huntington's Employment with Gerson**

17.     Huntington holds himself out to be a sophisticated and experienced fundraiser.  On information and belief, Huntington is the owner of Vgiftssd.org, a San Diego-based business that markets its ability to assist charities with raising money.  Huntington is identified as Vgiftssd.org's Director of Development.  Huntington's online biography states that "he has wisdom beyond his years which he attributes to his parents, his education and living in other countries such as Italy, Japan, and France" and that "Huntington has been raising money for different charities in Southern California since 2004.... He is producing an average of $10,000 per month in proceeds for San Diego based charities, while generating positive publicity for his clients."     (Exhibit "B" is a true and correct copy of Huntington's biography found on www.vgiftssd.org.)

18.     Based, in part, on Huntington's claimed dedication to charitable causes and his supposed ability to raise funds, Gerson hired Huntington as  its Resource Development Specialist.  Huntington worked for Gerson from September 4, 2008 until February 10, 2009.  Huntington's duties included fundraising for Gerson, and promoting Gerson, the Gerson Therapy and Gerson's philosophies and publications.

19.     Gerson is a small organization with only 12 employees.  As a result of his employment and duties with Gerson as its Resource Development Specialist, Huntington was entrusted to work independently and with little to no daily supervision.

20.     As part of his duties, Huntington was charged with the responsibility and authority to make all changes and updates to Gerson's websites.  Accordingly, Huntington had access to all of the Registered Works and Gerson's passwords for its on-line sales accounts.  Huntington utilized his own computer at the office, thus controlling his on-line activity without detection from Gerson.

111819/000047/1022384.06

**Huntington's Establishment of Payment Accounts Supposedly for Gerson's Benefit**

21.    In the Fall of 2008, Huntington approached Anita Wilson, Gerson's Executive Director, about expanding the Institute's capability to sell its copyrighted publications on-line. As part of Huntington's efforts, on or about December 8, 2008, he opened a Gerson account on PayPal to enable purchasers to make purchases on-line with credit cards.  PayPal is an on-line service that allows customers to make purchases using "cash" from customers' checking accounts.

22.    When the customer uses PayPal to make an on-line purchase from a vendor, funds are deducted from the customer's account and directed into a holding account.  The vendor using PayPal designates an account into which the funds will ultimately be deposited.  The organization can review the funds in the "holding account" and then cause the funds to be released into the vendor's designated account.

23.    Huntington also made changes to Gerson's website to enable individuals to make purchases of Gerson's copyrighted materials from its website (the "Gerson On-line Store").  Customers could purchase materials from the Gerson On-Line Store and the funds would be transferred to a receiver account designated by the organization for the receipt of those funds.

24.    In addition, Huntington set up a PayLoadz account using the Gerson name to sell Gerson copyrighted material.  PayLoadz allows vendors to sell digital goods on-line (such as newsletters) and to have that good delivered automatically by the PayLoadz system. With simple information about the product and file, the PayLoadz system is able to generate a link that can be used anywhere on-line to make an item available for sale.  Customers click on the link to then make a purchase for the item through PayPal.

25.    Huntington represented that these changes would benefit Gerson by facilitating sales more quickly.   In reality, Huntington generated almost no revenue on behalf of the organization, but as explained below, redirected revenue away from Gerson and to himself.

111819/000047/1022384.06

**Huntington's Acts of Misappropriation and False Designation**

26.     Unbeknownst to Gerson or to anyone at Gerson, on information and belief, Huntington designated an account or accounts under his control as the receiver account for a significant portion of the purchases made through PayPal for Hungtington's personal benefit and to the detriment of Gerson.

27.     Unbeknownst to Gerson or to anyone at Gerson, on information and belief, Huntington designated an account or accounts under his control as the receiver account for some or all of the purchases made at the Gerson On-line Store for Huntington's personal benefit and to the detriment of Gerson.

28.     Unbeknownst to Gerson or anyone at Gerson, as to the Gerson materials Huntington made available through PayLoadz, on information and belief, Huntington falsely identified the author of such materials as "Health Matters," thus, misleading the public as to the true authorship of the works. "Health Matters" is not and never has been a designation used by Gerson and Gerson has never authorized Huntington or anyone else to market Gerson's materials under that name.  Unbeknownst to Gerson or anyone at Gerson, on information and belief, Huntington designated his personal checking account as the receiver account for all of the purchases made through PayLoadz.

29.     Huntington's diversion of proceeds from the sale of Gerson's Registered Works, and his false designation with those works, was intentional and despicable.  Huntington knew that his acts were unauthorized and illegal.

30.     Huntington admitted this conduct in an interview with an investigator hired by Gerson.  Huntington further admitted that he knew that Gerson would not have authorized the proceeds to be deposited into his bank account.  (Attached hereto as Exhibit "C" is true and correct copy of portions of Huntington's interview with Barry Mozian from Talon Executive Services.)

111819/000047/1022384.06

**Huntington's Infringing Conduct**

31.    Huntington further violated the trust reposed in him by Gerson by using Gerson's Trademarks, Registered Works and other copyrighted material, without authorization, to divert funds from Gerson.

32.    While employed with Gerson, Huntington knowingly and willfully used Gerson's Trademarks, its Registered Works and other copyrighted materials and its goodwill to deceive and mislead the public and to make sales from which Gerson has not had received the proceeds, and for which the proceeds have been directed to Huntington's personal banking account. Huntington established websites and on-line "stores" on which he displayed, marketed and sold Gerson's trademarked and copyrighted materials to customers located around the world.

33.    On information and belief, Huntington's illegal infringement of Gerson's copyrights and trademarks continued after the termination of his employment by Gerson, as he used the Gerson Trademarks, Registered Works and other copyrighted materials in an attempt to deceive the public and to pass off sales materials as benefiting Gerson.

34.    Huntington has utilized Gerson's Trademarks to drive traffic to websites which he controls, in an effort to make the materials on his website confusingly similar to Gerson's copyrighted materials and products.

35.    In addition, Huntington's website was confusingly similar to Gerson's website. It was difficult for a consumer visiting Huntington's website to tell that the website and the sales generated by the purchase of materials from Huntington's website were not sponsored by and do not inure to the benefit of Gerson.

36.    Huntington has used Gerson's Trademarks on the Internet to misdirect prospective purchasers of, and others seeking information about, Gerson's products and therapies to Huntington's web site.

37.    The natural, probable and foreseeable result of Huntington's wrongful conduct, as alleged above, has been to deprive Gerson of the benefits of using and selling its copyrighted materials and from gaining revenue from the sale of those materials. In addition, Huntington's infringing conduct has prevented Gerson from learning about members of the public to whom

1  Gerson could market its services and members of the public who may be interested in purchasing
2  additional services from Gerson.   Gerson has also suffered a substantial loss of goodwill.
3  Moreover, Gerson is concerned that members of the public seeking information about Gerson and
4  Gerson therapy will not obtain such information if they deal only with Huntington and not
5  Gerson.

6       38.    Huntington admitted this conduct in an interview with an investigator hired by
7  Gerson.  (See Exhibit "C".)

8       39.    On information and belief, unless enjoined by this Court, Huntington intends to
9  continue his course of conduct and to wrongfully use, infringe upon, sell and otherwise profit
10  from Gerson's Trademarks and copyrighted materials.

11       40.    As a direct and proximate result of the acts alleged above, Gerson has already
12  suffered irreparable injury, and lost profits.  Gerson has no adequate remedy at law to redress all
13  of the injuries that Huntington has caused and intends to cause by his conduct.   Gerson will
14  continue to suffer irreparable damage and sustain loss of profits and Huntington will continue to
15  be unjustly enriched unless and until Huntington's actions alleged above are enjoined by this
16  Court.

17                              **CLAIMS FOR RELIEF**
18                              **First Claim for Relief**
19             **(Federal Trademark Infringement – 15 U.S.C. § 1114)**

20       41.    Gerson hereby re-alleges and incorporates, by this reference, paragraphs 1
21  through 40 above, as though fully set forth herein.

22       42.    The actions of Huntington described herein constitute infringement of Gerson's
23  Trademarks in violation of Section 32(b) of the Lanham Act, 15 U.S.C. § 1114(1).

24       43.    Huntington's willful, deliberate and unauthorized use of Gerson's Trademarks has
25  caused confusion and is likely to continue to cause confusion, mistake and deception in that
26  consumers are likely to associate and believe Gerson's goods and services are associated with,
27  connected to, affiliated with, authorized by, endorsed by, and/or sponsored by Huntington, in
28  violation of Section 32(b) of the Lanham Act, 15 U.S.C. § 1114(1).

111819/000047/1022384.06

44.     As a direct and proximate result of Huntington's unauthorized use of the Trademarks, Huntington has damaged, and will continue to damage, Gerson's goodwill and reputation, and have caused, and are likely to continue to cause, a loss of sales and profits for Gerson.  Huntington's actions have caused and will continue to cause irreparable harm to Gerson and to the public who are confused by Huntington's unauthorized use of the Trademarks, unless restrained and enjoined by this Court.  Gerson has no adequate remedy at law to prevent Huntington from continuing their infringing actions and from injuring Gerson.

45.     As a further direct and proximate result of Huntington's actions, Gerson has been damaged and will continue to sustain damage, and is entitled to receive compensation arising from its lost sales, lost profits, reputational damages, and efforts necessary to minimize and/or prevent customer confusion, in an amount to be proven at the time of trial.

46.     In addition, Gerson is entitled to disgorgement of Huntington's profits, and is entitled to interest and to its attorneys' fees and costs incurred in bringing this action.  Gerson is further entitled to injunctive relief as set forth above, and to all other and further forms of relief this Court deems appropriate.

## Second Claim for Relief

### (Lanham Act Violations 15 U.S.C. § 1125(a))

47.     Gerson hereby realleges and incorporates, by this reference, paragraphs 1 through 46 above, as though fully set forth herein.

48.     Huntington's unauthorized use of the Trademarks and substantially similar marks in connection with marketing, advertising, promotion, offering for sale and selling of its goods and services constitutes unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), because Huntington's use suggests a false designation of the origin of its goods and services.

49.     Huntington has used Gerson's Trademarks and substantially similar marks in its advertising and on its business documents.  Based on information and belief, Huntington has used Gerson's trademarks as metatags and metatext on its website to cause various search engines to direct traffic to websites controlled by Huntington.

-9-
COMPLAINT

50.     As a direct and proximate result of Huntington's unauthorized use of the Trademarks, Huntington has damaged and will continue to damage Gerson's goodwill and reputation, and has caused and will continue to cause loss of sales and profits to Gerson. Huntington's actions have caused and will continue to cause irreparable harm to Gerson and to the public who are deceived as to the source of Huntington's goods, unless restrained and enjoined by this Court.  Gerson has no adequate remedy at law to prevent Huntington from continuing his infringing actions and from injuring Gerson.

51.     As a further direct and proximate result of Huntington's actions, Gerson has been and will be damaged and is entitled to receive compensation arising from its lost sales, lost profits and efforts necessary to minimize and/or prevent customer confusion, in an amount to be proven at the time of trial.  In addition, Gerson is entitled to disgorgement of Huntington's profits, and is entitled to interest and attorney's fees and costs incurred in bringing this action, all in an amount to be proven at trial.  Gerson is further entitled to injunctive relief, as set forth above, and to all other and further forms of relief this Court deems appropriate.

### Third Claim for Relief

### (Copyright Infringement – 17 U.S.C. §§ 101 et seq.)

52.     Gerson hereby realleges and incorporates, by this reference, paragraphs 1 through 51 above, as though set forth fully herein.

53.     During the course of and/or prior to Huntington's employment with Gerson, Gerson created the Registered Works which are original written works of authorship and compilations which Gerson used for the purpose of promoting its products and services and for the purpose of promoting providing instruction for and education abut Gerson and the Gerson Therapy.

54.     Gerson displayed the Registered Works on its Internet website and in printed brochures and other media.

55.     Prior to Huntington's infringing acts, Gerson applied for registration of its Registered Works in the United States Copyright Office.

111819/000047/1022384.06

56.     Gerson is informed and believes and based thereon alleges that Huntington has been, and is currently, infringing the Registered Works in violation of 17 U.S.C. §§ 101, et seq., through substantial use of the Registered Works and/or derivative works on an Internet web site promoting Huntington's products and services and in other advertising and marketing efforts and by participating in and furthering such infringing acts and/or partaking in the proceeds from such infringing acts.

57.     Gerson is informed and believes and based thereon alleges that Huntington's acts of infringement include the unauthorized selling and/or offering for sale Gerson copyrighted materials that Huntington obtained and/or developed during the course of his employment at Gerson.

58.     Gerson is further informed and believes and based thereon alleges that Huntington's repeated past and continued infringement is willful and deliberate in disregard of Gerson's rights, rendering this case appropriate for additional damages under 17 U.S.C. § 504(c)(2).

59.     Gerson is further informed and believes and based thereon alleges that Huntington's acts of infringement will continue.

60.     Gerson is entitled to preliminary and permanent injunctive relief restraining Huntington, and each of them, and his officers, agents, and employees, and all persons acting in concert with him, from engaging in any further acts in violation of the Copyright Laws of the United States, or inducing others to do the same.

61.     Gerson is further entitled to recover damages including triple damages for willfulness and attorneys' fees it has sustained and will sustain, and any gains, profits and/or advantages obtained by Huntington as a result of his acts of infringement alleged herein, in an amount to be proven at trial but which exceeds the jurisdictional limit of this court.

111819/000047/1022384.06

**Fourth Claim for Relief**

**(Conversion)**

62.    Gerson hereby realleges and incorporates, by this reference, paragraphs 1 through 61 above, as though set forth fully herein.

63.    At the time, Huntington misdirected funds from the sale of materials on Gerson's website, Gerson had exclusive ownership rights to all income derived from the sale of such materials.

64.    Huntington willfully and intentionally, without legal justification therefor, interfered with Gerson's receipt of payment directed to it by customers.

65.    In misdirecting payment sent to Gerson by its customers,, Huntington unlawfully and intentionally took and converted Gerson's property of his own use and benefit.

66.    Huntington's conversion was oppressive, malicious and fraudulent.

67.    Gerson has been injured by this conversion in that it has been deprived of the proceeds from sales of Registered Works and other materials sold on Gerson's website.

68.    Gerson is entitled to the exclusive and immediate possession of the funds converted by Huntington, with interest thereon, any and all profits whether direct or indirect, that Huntington acquired by the conversion, as well as punitive and exemplary damages.

**Fifth Claim for Relief**

**(Unfair Competition – Cal. Bus. and Prof. Code § 17200, *et seq.*)**

69.    Gerson hereby realleges and incorporates, by this reference, paragraphs 1 through 68 above, as though fully set forth herein.

70.    The actions of Huntington described herein constitute unlawful, unfair, and fraudulent business acts and practices, in violation of California Business & Professions Code § 17200, *et seq*.

71.    Huntington's unauthorized use of the Trademarks has caused, and will continue to cause confusion, mistake and deception in that customers are likely to believe that Huntington's goods are associated with, connected to, affiliated with, authorized by, endorsed by and/or sponsored by Gerson.

111819/000047/1022384.06

72.     As a result of these acts, Huntington has received and will continue to receive sales and profits generated from the strength of Gerson's success, goodwill, and consumer recognition. Huntington's unlawful, unfair, and fraudulent conduct has resulted in wrongful diversion of business, money, and/or property from Gerson to Huntington.

73.     Gerson has suffered and will continue to suffer damages as a direct result of Huntington's conduct as described herein, and such damage will continue unless the Court enjoins Huntington's use of the Trademarks and trade secrets.

74.     By reason of the foregoing, Huntington has been unjustly enriched at the expense of the public and Gerson in an amount as yet unascertained, but in a sum to be proven at the time of trial so that Huntington can make appropriate restitution.

75.     Huntington should be ordered to disgorge any and all profits earned as a result of his unlawful, unfair actions.  Also, Huntington should be held accountable for all profits he has wrongfully obtained, through appropriate restitution.

76.     Pursuant to California Business and Professions Code section 17200 *et. seq.*, Gerson is entitled to restitution and/or disgorgement of all money and/or property wrongfully obtained by Huntington.

77.     Gerson is also entitled to injunctive relief to prohibit Huntington from continuing their unlawful business practices, which are injuring both Gerson and the public in general.

**Sixth Claim for Relief**

**(Common Law Unfair Competition)**

78.     Gerson hereby realleges and incorporates, by this reference, paragraphs 1 through 77 above, as though set forth fully herein.

79.     The foregoing acts and conduct of Huntington constitute common law unfair competition to the detriment of Gerson and to the detriment of fair and honest competition.

80.     As a direct and proximate result of Huntington's unfair competition, Gerson is entitled to recover all proceeds and other compensation received or to be received by Huntington arising from the acts of unfair competition alleged herein.  Gerson requests that the Court order Huntington to render an accounting to ascertain the amount of such profits and compensation.

111819/000047/1022384.06

81.     As a direct and proximate result of Huntington's unfair competition, Gerson has been damaged, and Huntington has been unjustly enriched in an amount subject to proof at trial for which restitution and/or disgorgement is appropriate.

82.     Huntington's acts of unfair competition have caused and are causing, and unless enjoined by the Court, will continue to cause Gerson great and irreparable injury that cannot be fully compensated in money.  The Court should award permanent injunctions prohibiting further acts of unfair competition.

83.     Through the conduct alleged herein, Huntington is guilty of malice, fraud and/or oppression.  Gerson should therefore be awarded punitive damages in an amount according to proof.

### Seventh Claim for Relief

### (Breach of Duty of Loyalty)

84.     Gerson hereby realleges and incorporates, by this reference, paragraphs 1 through 83 above, as though fully set forth herein.

85.     Pursuant to California Labor Code sections 2860 and 2863, employees owe to their employers a duty of loyalty.  An employee is obligated to give preference to the business of the employer when conducting any business on his or her own that is similar to the employer's business. Likewise, everything the employee acquires from the employer by virtue of his or her employment (except compensation) belongs to the employer, whether acquired during or after the term of employment.

86.     While an employee of Gerson, Huntington infringed Gerson's trademarks and copyrights and diverted funds from Gerson for his personal benefit.

87.     Huntington used Gerson's equipment and funds, as well as the access he had been given by Gerson to Gerson's network, server, passwords and accounts, to benefit himself to the detriment of Gerson.

88.     Huntington breached his duty of loyalty to Gerson, to the detriment of Gerson.

89.     Plaintiffs have been harmed in an amount according to proof.

111819/000047/1022384.06

## **Eighth Claim for Relief**

### **(Breach of Fiduciary Duty)**

90.     Gerson hereby realleges and incorporates, by this reference, paragraphs 1 through 89 above, as though fully set forth herein.

91.     At all times relevant to this Complaint, Huntington owed fiduciary duties to Gerson, including duties of care, and loyalty, by virtue of his position as Gerson's Resource Development Specialist.

92.     As Gerson's Resource Development Specialist, Huntington was given great leeway to develop and control Gerson's On-line Store and any other vehicles by which Huntington sought to market Gerson and the Gerson Therapy.

93.     Huntington was given access to Gerson's banking accounts and passwords and performed his duties largely unsupervised.

94.     As a result of those fiduciary duties, Huntington was obligated to use reasonable care, diligence and skill in his work on behalf of Gerson.  Huntington was under a duty not to compete with Gerson, not to obtain interests adverse to Gerson and not to obtain secret profits from his position with Gerson or from Gerson's Trademarks and Registered Works.

95.     Huntington told Gerson's Executive Director, Ms. Wilson, that he was developing the Gerson's On-line Store to be more efficient.  Specifically, he told Ms. Wilson that the he was developing on-line capabilities so that customers could make purchases of the Registered Works by credit card.  He represented that this would improve and encourage sales as potential customers could immediately purchase materials.

96.     However, unbeknownst to Gerson, or anyone at Gerson, on information and belief, Huntington designed the On-line Store and other websites in a manner such that Huntington's personal banking account was the receiver account for the proceeds from the sale of the Registered Work—not Gerson's accounts.

97.     Furthermore, unbeknownst to Gerson, or anyone at Gerson, on information and belief, Huntington falsely identified the author of Gerson's Registered Works as "Health Matters," thereby misleading the public as to the true authorship of the works.

111819/000047/1022384.06

98.     Gerson is informed and believes and based thereon alleges that Huntington breached the fiduciary duties he owed to Gerson by, among other things:

        (a)     promoting his financial and other interests over the interests of Gerson;

        (b)     obtaining secret profits;

        (c)     converting Gerson's property, including Gerson's Trademarks and Copyrighted Works, to his own use and benefit;

        (d)     redirecting Gerson's customers and/or business opportunities to himself;

        (e)     using Gerson's resources for their his own profit and benefit and to the detriment of Gerson;

        (f)     using Gerson's resources to promote Huntington's business interests.

99.     In undertaking the actions and omissions alleged herein, Huntington intended and attempted to improve or maintain his own financial interests to the detriment of Gerson.  As a result of such acts and omissions, Huntington breached the fiduciary duties he owed to Gerson, including the duties of loyalty, care and disclosure.

## Ninth Claim for Relief

### (Fraud)

100.     Gerson realleges and incorporates, by this reference, paragraphs 1 through 99 above, as though fully set forth herein.

101.     At the time, Huntington infringed the Trademarks and the Registered Works, Gerson had exclusive ownership rights in the Trademarks and had either exclusive ownership rights in or the right to possess the Registered Works.

102.     During his employment with Gerson, Huntington held the position of Resource Development Specialist.  Gerson entrusted Huntington with raising money for the organization and positively promoting the organization and the Gerson Therapy to the public.

103.     Huntington was entrusted with sensitive information related to Gerson, such as Gerson's bank accounts and passwords and was largely left unsupervised, as he was expected to perform at an executive level.

104.     Huntington convince Gerson and its Executive Director, Ms. Wilson, to expand Gerson's on-line sales capabilities.  In part, Huntington represented that allowing on-line credit card sales would increase sales and the promotion of the Registered Works and the Gerson Therapy.

105.     Gerson entrusted Huntington to develop the on-line capabilities described above.

106.     Huntington, however, developed those capabilities in such a way that it was his personal banking account, which became the receiver account for the proceeds for all or most of the on-line sales.

107.     Huntington intentionally misrepresented his activities and concealed the fact that his personal banking account would receive the proceeds of sales of Gerson's Registered Works in order to benefit Huntington.

108.     Huntington's despicable actions were fraudulent and were done with malice and oppression and were done with the intent to deceive Gerson.

109.     Gerson is entitled to punitive and exemplary damages to punish Huntington for his fraudulent and despicable activities and to attorneys' fees.

## Tenth Claim for Relief

### (Accounting)

110.     Gerson realleges and incorporates, by this reference, paragraphs 1 through 109 above, as though fully set forth herein.

111.     At all times relevant to this Complaint, Huntington owed fiduciary duties to Gerson, including duties of care and loyalty.

112.     Huntington breached his fiduciary duties by illegally using Gerson's Trademarks and Copyrighted Works for his own pecuniary gain.

113.     Gerson is unable to determine the amount of gain obtained by Huntington from his illegal acts without a proper accounting of Huntington's gains from his illegal activities.

111819/000047/1022384.06

## **PRAYER**

WHEREFORE, Plaintiff Gerson requests judgment as follows:

**On the First and Second Claims for Relief:**

1.     That Gerson's Trademarks have been infringed and/or diluted by Huntington's actions under 15 U.S.C. § 1114, 15 U.S.C. §1123(c)(1), 17 U.S.C. §§ 101, *et seq.*, and Federal Common Law;

2.     Huntington has unfairly competed with Gerson in violation of 15 U.S.C. §1125 and California Business and Professions Code § 17200, *et seq.*;

3.     Gerson recover damages from Huntington for Huntington's acts of federal trademark infringement, dilution and unfair competition, and that these damages be trebled under 15 U.S.C. §1117(b) because Huntington's acts have been willful, and that Gerson be awarded its reasonable attorneys' fees.

4.     Gerson recover damages from Huntington for Huntington's acts as unfair competition, common law trademark infringement, and unjust enrichment, in that Gerson further recover punitive damages under California law because Huntington's acts have been willful.

5.     Huntington be enjoined:

(a)     From using Gerson's Trademarks and/or any combination, reproduction, counterfeit, copy or colorable imitation of the Gerson Trademarks in connection with advertising, offering for sale, or sale of goods or services the same or similar to those offered by Gerson, that are likely to be confused with those of Gerson, or likely to injure Gerson's business reputation or the reputation of Gerson's Trademarks;

(b)     From using Gerson's Trademarks, and/or any combination, reproduction, counterfeit, copy or colorable imitation of Gerson's Trademarks in any manner likely to cause confusion, to cause mistake or to deceive;

(c)     From selling, offering for sale, advertising, promoting, or passing off, inducing or enabling others to sell offer to sell, advertise, promote, or pass off any goods or services similar to the goods and services provided by Gerson utilizing the Trademarks;

111819/000047/1022384.06

(d)     From committing any acts calculated to cause purchasers to believe that Huntington's goods are the goods of Gerson in whole or in part; and

(e)     From otherwise competing unfairly with Gerson in any manner, including, but not limited to, infringing Gerson's Trademarks, the Registered Works and/or Gerson's other copyrighted works.

**On the Third Claim for Relief:**

That judgment be entered that Huntington willfully infringed Plaintiff's Registered Works;

That Huntington be preliminarily and/or permanently enjoined from directly or indirectly infringing Plaintiff's Registered Works, or inducing others to do the same;

That judgment be entered for triple damages, together with prejudgment interest, to compensate Gerson for Huntington's willful infringement of the Registered Works;

That judgment be entered for Gerson in the amount of Huntington's actual proceeds from his infringement of the Registered Works and for additional damages pursuant to 17 U.S.C. § 504(c);

That judgment be entered for an award of reasonable attorney's fees to Gerson;

That judgment be entered for costs to be awarded to Gerson; and

For such other and further relief as the Court may deem proper under the circumstances.

**On the Fourth Claim for Relief:**

For exclusive and immediate possession of the Trademarks and Registered Works;

For damages for conversion with interest thereon;

For any and all profits whether direct or indirect, that Huntington acquired by the conversion; and

For punitive and exemplary damages.

**On the Fifth Claim for Relief:**

For disgorgement of any and all proceeds Huntington has obtained from the unlawful use of Gerson's Trademarks and Registered Works;

111819/000047/1022384.06

1    For restitution; and

2        For a preliminary and permanent injunction preventing Huntington from further

3    use, in any manner, of the misappropriated Trademarks and Registered Works, including but not

4    limited to the sale, offering for sale, distribution, marketing or advertising of any product or

5    service related to the Trademarks, the Registered Works or any of Gerson's copyrighted

6    materials.

7    **On the Sixth Claim for Relief:**

8        1.    For disgorgement of any and all proceeds Huntington has obtained from the

9    unlawful use of Gerson's Trademarks and Registered Works;

10       2.    For restitution;

11       3.    For an accounting to ascertain the amount of proceeds received by Huntingotn

12   from his unfair competition;

13       4.    For a preliminary and permanent injunction preventing Huntington from further

14   use, in any manner, of the misappropriated Trademarks and Registered Works, including but not

15   limited to the sale, offering for sale, distribution, marketing or advertising of any product or

16   service related to the Trademarks or Registered Works; and

17       5.    For punitive damages.

18   **On the Seventh Claim for Relief:**

19       For compensatory consequential and incidental damages, according to proof.

20       For punitive damages.

21   **On the Eighth Claim for Relief:**

22       For compensatory consequential and incidental damages, according to proof.

23       For punitive damages.

24   **On the Ninth Claim for Relief:**

25       For compensatory consequential and incidental damages, according to proof.

26       For punitive damages; and

27       For attorney's fees.

28

111819/000047/1022384.06

1 **On the Tenth Claim for Relief:**

2 For an accounting with respect to all sales of all Gerson-related materials on any

3 website or account operated or controlled in any way by Huntington;

4 **On All Claims for Relief:**

5 For an award of attorneys' fees;

6 For costs of suit incurred herein;

7 For such other and further relief as the Court may deem just and proper; and

8 Demand for Jury Trial.

9

10 DATED: June 30, 2009                          PROCOPIO CORY HARGREAVES
                                                & SAVITCH LLP

11

12                                          By: _____
                                               Paul A. Tyrell
13                                             B. Allison Borkenheim
                                               Attorneys for Plaintiff
14                                             The Gerson Institute

15

16

17

18

19

20

21

22

23

24

25

26

27

28

111819/000047/1022384.06

**EXHIBIT A**

**Int. Cl.: 42**

**Prior U.S. Cls.: 100 and 101**

## United States Patent and Trademark Office

**Reg. No. 2,526,365**

Registered Jan. 8, 2002

### SERVICE MARK
### PRINCIPAL REGISTER

## GERSON

GERSON INSTITUTE (CALIFORNIA CORPORA-
  TION)
3130 BONITA ROAD, #207
CHULA VISTA, CA 919103263

  FOR: PROVIDING TREATMENT FOR HUMAN
ILLNESSES BY MEANS OF NUTRITIONALLY
BASED THERAPY AND COUNSELING SERVICES
IN CONNECTION THEREWITH, IN CLASS 42 (U.S.
CLS. 100 AND 101).

FIRST USE 0-0-1938; IN COMMERCE 0-0-1938.

SEC. 2(F).

SER. NO. 75-127,226, FILED 6-28-1996.

MARY CRAWFORD, EXAMINING ATTORNEY

**Int. Cls.: 9 and 16**

**Prior U.S. Cls.: 2, 5, 21, 22, 23, 26, 29, 36, 37, 38 and 50**

Reg. No. 2,521,443

## United States Patent and Trademark Office

Registered Dec. 25, 2001

### TRADEMARK
### PRINCIPAL REGISTER

### GERSON

GERSON INSTITUTE (CALIFORNIA CORPORA-
TION)
5130 BONITA ROAD
BONITA, CA 91902

FOR: PRERECORDED AUDIOCASSETTES AND
VIDEOCASSETTES FEATURING INFORMATION
ON NUTRITION-BASED AND DETOXIFYING
MEDICAL TREATMENT FOR VARIOUS ILLNES-
SES , IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 0-0-1981; IN COMMERCE 0-0-1981.

FOR: BOOKS, INFORMATIONAL BROCHURES,
MAGAZINES, AND NEWSLETTERS FEATURING

INFORMATION ON A NUTRITION-BASE AND
DETOXIFYING MEDICAL TREATMENT FOR VAR-
IOUS ILLNESSES, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23,
29, 37, 38 AND 50).

FIRST USE 0-0-1958; IN COMMERCE 0-0-1958.

SEC. 2(F).

SER. NO. 75-014,817, FILED 11-3-1995.

MARY CRAWFORD, EXAMINING ATTORNEY

# Style & Technique
## story by HARUO SUZUKI

Adam Huntington is a rare breed in San Diego or any city for that matter. Adam graduated from La Jolla High School and then left San Diego to pursue his education at The University of Southern California. Adam Huntington is only twenty-nine, but he has wisdom beyond his years which he attributes to his parents, his education, and living in other countries such as Italy, Japan, and France. "I have realized that we all want for the same things in life and that we all work hard to achieve them." Adam Huntington has been a San Diego City Lifeguard off and on since 1996 and loves to help people, but his benevolence does not stop at the sea wall.

Adam Huntington has been raising money for different charities in Southern California since 2004 and has recently teamed up with San Diego's business community to make an impact on his home town. Adam Huntington has developed what he calls, " The business plan for the 21st Century." In a day and age where most executives in the corporate world are making record profits, Adam Huntington is generating record proceeds for San Diego based charities. He is producing an average of $10,000 per month in proceeds for San Diego based charities, while generating positive publicity for his clients. Vgifts SD has a rapidly expanding client list which includes most of San Diego's top charity organizations and charitable businesses. Adam Huntington is quietly becoming one of the best fundraising organizers in San Diego and has a current goal of being the #1 benefactor for San Diego based charities by 2010. When we asked Adam why, he merely smiled and replied, "You can achieve anything if you put your mind to it."

"You can achieve anything if you put your mind to it."

Vgifts SD
www.vgiftssd.org



Adam Huntington - Director of Development for Vgifts SD
Photography by Koji Takahashi

29

**EXHIBIT C**

INTERVIEW OF ADAM HUNTINGTON
CASE NO. 112-09
SUBJECT – GERSON INSTITUTE
TRANSCRIPTION

**LEGEND**
BM:        Barry Mozian
AH:        Adam Huntington
AW:        Anita Wilson

B.M.:      Okay.  The time is approximately 1522hrs; the date is Thursday, um, February 5, 2009.  This is Barry Mozian with Talon Executive Services and I'm currently located at The Gerson Institute Headquarters, which is physically located at 1572 Second Street, City of San Diego, County of San Diego, State of California, 92101 and I am taking the Oral Declaration today of an individual.  I have two other people in the room with me who I need to have them identify themselves at this time by stating their name, the organization they work for, the position they hold in that organization and that they acknowledge they are being recorded. I'll start with…..

A.H.:      Adam Huntington, Resource Development Specialist, Gerson Institute.

B.M.:      And you realize you're being recorded?

A.H.:      Um, yes.

B.M.:      Okay.

B.M:       and

A.W.:      Anita Wilson, I work for The Gerson Institute, I'm the executive director and I am aware I am being recorded.

B.M.:      Great.  Now, Adam as we began the interview at about 1400hrs or 2pm  this afternoon, I took a moment to kind of walk you through our processes of what we do and  how we go about doing the interviews when were conducting an investigation.  Do you recall that piece?

AH:        Yes

B.M.:      Now we covered a variety of information at that fist 10-15 minutes of the interview.  One of the things that we covered though was, uh, how to memorialize the meeting.  Do you recall that?

A.H.:      Yes.

1

B.M.:    I got you. Okay, but nothing beyond that?

A.H.:    No

BM:    Ok, Now track 39 is when we typically have you read any written statements you provided in to the record. You were asked to provide a written statement and you opted not to provide a written statement is that correct?

A.H.:    Yes

B.M.:    Okay, was there any reason why?

A.H.:    Uh just cause I didn't feel comfortable making a written statement.

B.M :    Ok fair enough. So what we'll do then is I'll go over my notes. That I was writing while we were going through the non-recorded part of the meeting.

A.H.:    Um hmm

B.M.:    And have you summarize uh the primary issues we discussed here today. Okay?

B.M.:    The primary focus of the investigation was to determine why there were multiple PayPal accounts set up, one under the institutes account and one under your personal account.

A.H.:    Um-hum.

B.M.:    Okay.  So if can you kind of narratively describe for me, uh, what we've already covered thus far as to why you set up a separate bank account your own personal bank account and had Gerson Institute due funds routed from the sale of Gerson Institute products into your account.

A.H.:    Um, I don't—I don't think I classified it that way. Um.

B.M.:    Um, - - .

A.H.:    What do your notes say as far as that goes?

B.M.:    Um that's exactly what they say.  Maybe we can back up. Talk to me about how you set up the PayPal accounts, um, that received funding from not only the Gerson Institute store, Website store, but also from the Payloads Market place? Um, - - .

A.H.:    Um, but the two accounts were set up basically to to, um, sell electronic files and one account was set up originally and, uh, the additional account was set up to relieve financial pressure on the first account that was set up, um, and as I stated before there's really no financial assetts that the secondary account that was set up as it resets each month- -.

14

B.M.:   Okay so let's back up and clarify some of that for some folks who may not understand precisely what you just said so I'll walk you through as we had described it before.

A.H:    ok

B.M.:   you came up with the idea of setting up a PayPal account to um be able to accumulate funds from the online sale of Gerson Institute products?

A.H.:   Right.

B.M.:   Whether it was the juicing video, whether it was the little enema book or any of the other products that carries The Gerson Institute name, and belongs to the Gerson Institute. So you set up this pay pal account it's was your idea you brought it to Anita she approved it. To set up and account and route those funds to a Gerson institute Account, bank account. -

A.H.:   Right.

B.M.:   Okay.  So, you did that?

A.H.:   Um-hum.

B.M.:   You initially set up the first account mistakenly putting it under your name but then you corrected that and you informed Anita, and set up the second pay pal account going to the Gerson Institute bank account

A.H.:   Right.

B.M.:   Okay. She had access to the password and the log on and all that

A.H.:   Um-hum.

B.M.:   Correct?

A.H.:   Yes.

B.M.:   Okay.  Then you discovered that there was, um, the financial burden that we were talking about was that after a certain number of transactions dollar amounts transacted on the PayPal account that the rate that the institute would be charged for continuing sales would go up.

A.H.:   Right.  Or we'd have to discontinue sales.

B.M.:   Or you'd have to discontinue sales.  So more business, uh, PayPal makes a little bit more and so on and so on cuts into the profits of the institute. So you then came up with the idea to open a second account,

A.H:    um hmm

15

B.M.:   PayPal account and spread the transactions, the new transactions to that account so that you're under that thresh hold limit. That would start increasing the fees.

A.H.:   Right.

B.M.:   Okay.  What bank account did you open in that PayPal account or what account did you route the PayPal, that second PayPal account too?

A.H.:   Um Mine,

B.M.:   Okay, in your bank of America checking account?

A.H.:   Yes.

B.M.:   Ok

A.H.:   Yes.

B.M.:   Okay.  Did you inform Anita about that?

A.H.:   No.

B.M.:   Did you tell her why would be doing that?

A.H.:   No.

B.M.:   Okay.  Did you give Anita access to your bank account?

A.H.:   No.

B.M.:   Okay.  Um, was she aware in any way shape or form that Gerson Institute products were being sold both at Payloads and off of the Gerson Institute's website store - - funds were being directed to your personal account?

A.H.:   No.

B.M.:   Okay.  Why?

A.H.:   Um, as I stated before, I was trying to develop a, create an account so we could pay for a new website and new database because, um, the our from the feelings and statements that had been made in the past several months, um, we've all been under enormous pressure as the financial burden goes on the Gerson Institute.

B.M.:   Um-hum.

A.H.:   I was trying to help out.  Um, the PayPal account that we set up, I was hoping it would accrue enough income in order to pay for a payment plan in order to –do this - and I stated before I do have a five year plan or actually a 3 year plan. That's set up and describes exactly what I'm talking about. .

16

B.M.:    A business plan?  That you wrote? That you authored?

A.H.:    Yes.

B.M.:    And does that business plan detail setting up here to for unknown PayPal accounts? Is that part of the mechanism?

A.H.:    no but it was just, it articulates how the how it was supposed to work.

B.M.:    Okay.  Um, why not just simply share the plan with Anita? W  hy didn't you do that?

A.H.:    Um, I guess uh, fear that it would be uh, turned down um because a lot of work that I have requested to be done has been not approved or, um, you know we've gone into other things, so that was pretty much it.

B.M.:    Okay.  You figured if it might get shot down before it got started?

A.H.:    Yeah.

B.M.:    Okay.  Um, we talked before about how you were able to come to an understanding of how to delineate which products being sold on Payloads or on the Gerson web store would be directed to this new account, your account

A.H.:    um hmm

B.M.:    Explain to me again how you did that? How did you come to know which products would route into your account?

A.H.:    Um, it was a, it was just there was when I originally set up the account, there were a couple of minor items that were, uh, set up for, um, the original account that we set up.

B.M.:    Um-hum.

A.H.:    And, uh, basically instead of just changing the link I just switched the account because the juicing video like I said, I felt like that was my propriety property, an um, while the Gerson Institute is making most of the money off that, um like I said I have acquired about 35 or 40 bucks off that. So-

B.M.:    Right and to that end you also stated that you'd be willing to provide your banking statements attached to that account to validate that claim that there's only 35 or $40 accumulated in that account?

A.H.:    Yes.

B.M.:    Okay.  And have you taken any of the monies out of that PayPal account?

A.H.:    No.

17

B.M.:   Okay. So you've not reallocated those funds transferred them anywhere?

A.H.:   No.

B.M.:   No. Okay. Um, why not?

A.H.:   As I stated before I was trying to build up an account to pay for new Gerson equipment.

B.M.:   What was the threshold dollar amount that would trigger you to announce this to a manager??

A.H.:   Um, I'd say probably once it got up to around five to $700, um, which I anticipated – taking I don't know six months to um, six to 12 months.

B.M.:   Okay. With regard to the juicing video you mentioned that you pretty much produced that video from start to finish.

A.H.:   Um-hum.

B.M.:   From story boarding to concept to filming it um post production, putting it out on the internet

A.H:   Yes.

B.M.:   Okay. Was there any kind of, uh, shared intellectual property, contract agreement between yourself and the institute?

A.H.:   No.

B.M.:   Okay. Um, so you realize that in the absence of that, that this was essentially a job you had completed just the normal realm of, um, of your resource development position and that was just part of the scope of your job.

A.H.:   Um, yeah. Except that I didn't—I didn't do the majority of that work on that video here at the Institute there was, I would say maybe um, 25-percent of the work on that video went in here at the Gerson Institute on Gerson Institute time.

B.M.:   Um-hum.

B.M.:   The rest of it happened

A.H.:   The rest of it happened at-at my house. I worked on my computer, um, do the recording there.

B.M.:   Um-hum.

A.H.:   And do post production everything at my apartment- - .

18

B.M.:    Now you made Anita aware that you were doing that work at your apartment. Were you asked to do it at your apartment or did you say it would just be easier to do it at your apartment because you had the gear there.

A.H.:    Yeah, Pretty much.

B.M.:    OK

A.H.:    I mean there's a lot of things we can't do recording here because of all the phones ringing,

B.M:     Right, you don't have a studio here.

A.H:     machines, people walk around, yeah exactly.

B.M.:    So, so it was kind of a mutually beneficial set up to do it- at your apartment?

A.H.:    Yes.

B.M.:    It was just a better environment to be able to do that production work, so again mutually beneficial?

A.H.:    Yes.

B.M.:    Okay.  Um, you also said that the little enema book, that was something you considered propriety to you?

A.H.:    No.  No.  That's not proprietary to me.

B.M.:    Okay.  It's just one of the items that was selling and you had those proceeds routed to - .

A.H.:    No. it doesn't sell that much its just that there were just a few items when I originally set up the account that I, I just never got around to switching over and, um, just I mean that's basically it.  I just hadn't gotten around to, uh, switching them over, and um, with the workload that I had, I just I didn't get around to emailing our guy, I don't have personal control over those things.- - .

B.M.:    So its still that you  initially set it up, um, at some point you had set it up to go to gersontherapy@gmail, which routes to your account as opposed to gersontherapies@gmail which routes to,

A.H.:    Right, Originally it was set up Gerson Therapy, but then when we had to switch the account, um, there were only there were only a few links, that were set up to that um before we caught it and changed it and so I think I just was when you were asking me earlier which other links haven't been switched I think that's it because I noticed that there was um a sale and that's the only reason its coming to mine.

B.M.:   Okay. Now to be clear, you set up specifically gersontherapies@gmail.com to route to your PayPal account?

A.H.:   Yes.

B.M.:   Which was attached to your personal bank account?

A.H.:   Right.

B.M.:   Okay. So that was a cognitive decision and action

A.H.:   Yes.

B.M.:   Okay. Um, Gersontherapies(ies)@gmail.com, was initially routed and Anita was fully informed that all that was routed through the Gerson Institute PayPal account?

A.H.:   Right.

B.M.:   Okay. So you see the distinction there?

A.H.:   Yes.

B.M.:   one was intentionally sent to your account the other was sent to Gerson's account.

A.H.:   Yes.

B.M.:   On the, um, web store,  um, we know that, products from that website, are also routed to gersontherapy@gmail, which was your account.

A.H.:   Right.

B.M.:   Okay. So you would have had to actively go in and have that set up that way?

A.H.:   It was, like I said, it was originally set up that way and the accounts that are associated with those, just I just never changed those.

B.M.:   So you initially set it up to go to your account?

A.H.:   No, I initially set them up to the Gerson Institute Account.

B.M.:   Okay then at some point and changed it.

A.H.:   And then as we—when we switched the account –uh

B.M.:   You routed it to?

A.H:    all, all the subsequent links that were set up

B.M:    Right

20

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
THE GERSON INSTITUTE

**DEFENDANTS**
ADAM HUNTINGTON, AN INDIVIDUAL

(b) County of Residence of First Listed Plaintiff **San Diego**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **San Diego**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
PAUL A. TYRELL; ESQ. AND ALLISON BORKENHEIM, ESQ.
Procopio, 530 B Street, Ste. 2100, San Diego, CA 92101

Attorneys (If Known)
Unknown

'09 CV 1429 LAB   POR

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Med. Malpractice | ☐ 625 Drug Related Seizure |  28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument |  Liability ☐ 365 Personal Injury - |  of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &   Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
|  & Enforcement of Judgment |  Slander ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent |  Corrupt Organizations |
| ☐ 152 Recovery of Defaulted |  Liability   Liability | ☐ 660 Occupational | ☒ 840 Trademark | ☐ 480 Consumer Credit |
|  Student Loans | ☐ 340 Marine  **PERSONAL PROPERTY** |  Safety/Health | | ☐ 490 Cable/Sat TV |
|  (Excl. Veterans) | ☐ 345 Marine Product ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment |  Liability ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
|  of Veteran's Benefits | ☐ 350 Motor Vehicle ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) |  Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   Property Damage |  Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract |  Product Liability ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI |  12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal   Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |  Injury |  & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation |  or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment   Sentence | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/  **Habeas Corpus:** |  Security Act |  26 USC 7609 | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land |  Accommodations ☐ 530 General | | |  Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | |  Under Equal Access |
| |  Employment ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | |  to Justice |
| | ☐ 446 Amer. w/Disabilities - ☐ 555 Prison Condition |  Alien Detainee | | ☐ 950 Constitutionality of |
| |  Other | ☐ 465 Other Immigration | |  State Statutes |
| | ☐ 440 Other Civil Rights |  Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | Appeal to District |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. Sects. 1114; 28 U.S.C. Sects. 1331 and 1338
Brief description of cause:
Trademark Infringement; Copyright infringement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ Injunctive relief

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 6/30/09

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 1580 AMOUNT 350.—    APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____

6/30/09

Court Name: USDC California Southern
Division: 3
Receipt Number: CAS002580
Cashier ID: sramirez
Transaction Date: 06/30/2009
Payer Name: KNOX ATTY SVCS.
-----------------------------------
CIVIL FILING FEE
 For: THE GERSON INT. V. HUNTINGTON
 Case/Party: D-CAS-3-09-CV-001429-001
 Amount:        $350.00
-----------------------------------
CHECK
 Check/Money Order Num: 8657
 Amt Tendered:  $350.00
-----------------------------------
Total Due:       $350.00
Total Tendered: $350.00
Change Amt:      $0.00


There will be a fee of $45.00
charged for any returned check.