# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE GERSON INSTITUTE, a California non-profit organization,<br><br>          Plaintiff,<br>  vs.<br><br>ADAM HUNTINGTON, an individual,<br><br>          Defendant. | CASE NO. 09cv1429-LAB (POR)<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS** |

The Gerson Institute is an organization that promotes alternative treatment of disease. One of its business ventures is the sale of books and other materials on various nutrition- and health-related topics. Gerson hired Adam Huntington to help promote its organization and market its books. After the business relationship between Gerson and Huntington broke down, Gerson brought this action against Huntington, raising federal trademark and copyright claims, as well as various state claims arising from the business relationship.

Huntington moved to dismiss the original complaint, arguing both that Gerson failed to state a claim and that the Court lacked jurisdiction. The Court granted the motion and dismissed the complaint with leave to amend. Gerson then filed an amended complaint ("FAC"), and Huntington again moved to dismiss based on lack of jurisdiction. Huntington also requests an award of attorney's fees.

///

## I. Background

The following statement of facts is taken from the allegations in the FAC. Gerson, a small nonprofit organization, alleges it owns and has registered the copyright in five works (the "Registered Works"), which it sells on its website, as well as the mark "GERSON" for prerecorded audiocassettes and videocassettes. Gerson also sells other works, such as newsletters, in which it holds the copyright. The FAC doesn't specify the medium or media in which the Registered Works were made available, but some were sold as digital works. (FAC, ¶ 27.) Gerson also sells works by Charlotte Gerson, who has granted marketing rights to Gerson. (*Id.*, ¶ 12.)

Gerson hired Huntington as a "Resource Development Specialist," beginning September 4, 2007. His duties included fundraising, and promoting Gerson, Gerson's therapeutic technique and philosophies, and Gerson's publications. His "primary focus was to increase Gerson's income through several sources." (FAC, 4:17–18.) The FAC doesn't say what those sources were, but it goes on to name other things he was responsible for, which included website updates and website improvements, and online sales accounts. (*Id.*, ¶¶ 20, 21, 24, 26, 27, 109, 110.) Gerson provided Huntington with its bank accounts and passwords, and left him unsupervised, trusting him to perform at an executive level. (*Id.*, ¶ 109.) The amended complaint doesn't specifically allege the terms of Huntington's employment, but does attach as exhibits the engagement letter and the transcript of an interview with Huntington in which Gerson's executive director Anita Wilson also participated.

Huntington opened a PayPal account in the Gerson name to enable customers to buy Gerson's products online with credit cards. (FAC, ¶ 24.) He also set up an account on a website called PayLoadz using the Gerson name to sell Gerson copyrighted material. (*Id.* ¶ 27.) Huntington told Gerson these changes would benefit it by increasing and speeding up sales. (*Id.*, ¶ 28.) In fact, Gerson alleges, Huntington failed to increase Gerson's revenue, and instead redirected revenue to himself. (*Id.*)

Gerson charges Huntington with secretly setting up one or more alternate accounts to receive funds from the sales, so that the money went to him personally instead of to

1  Gerson. (FAC, ¶ 30, 32.) Gerson also alleges Huntington used Gerson's trademark as
2  metatags and metatext, to drive traffic to websites he controlled. (*Id.,* ¶ 38.) Gerson argues
3  this infringed both its copyrights and trademark, because Huntington was not authorized to
4  sell Gerson's books for his own benefit, only for Gerson's.

5  Gerson also says Huntington unauthorizedly misdesignated the Registered Works as
6  being authored by "Health Matters" instead of by their true authors, the Hildebrands and the
7  United Kingdom Gerson Support Group. (FAC, ¶ 31.) A printout of the PayLoadz website
8  page is attached as an exhibit to the complaint.

9  Gerson became dissatisfied with Huntington's performance and allegedly terminated
10 his employment February 10, 2008, just over five months after it had hired him. (FAC, ¶ 18.)
11 Gerson alleges Huntington continued his infringing behavior after his employment terminated
12 (FAC, ¶ 40), it continued through the date of the filing of the FAC, *i.e.*, February 23, 2010
13 (*Id.*, ¶ 61), and it is likely to continue into the future. (*Id.*, ¶¶ 45, 49, 50, 64.)

14 **II.     Legal Standards**

15 A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v.*
16 *Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a)(2) requires only "a short and plain
17 statement of the claim showing that the pleader is entitled to relief," in order to "give the
18 defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell*
19 *Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (May 21, 2007), quoting *Conley v. Gibson*,
20 355 U.S. 41, 47 (1957).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations; . . . a plaintiff's obligation to provide "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . .

25 *Bell Atlantic*, 127 S.Ct. at 1964–65 (citations omitted). "[S]ome threshold of plausibility must
26 be crossed at the outset" before a case is permitted to proceed. *Id.* at 1966 (citation
27 omitted).
28 / / /

Dismissal is warranted where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law"). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534.

In reviewing Rule 12(b)(6) motions, the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party, including all reasonable inferences to be drawn from the facts alleged. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Marceau v. Blackfeet Housing Authority*, 540 F.3d 916, 919 (9th Cir. 2008) (citation omitted). Nor does the Court accept as true allegations that contradict exhibits attached to the complaint, or allegations that represent unwarranted factual deductions or inferences. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## II.   Discussion

The original complaint was dismissed with leave to amend, because the Court found Gerson hadn't alleged sufficient facts to show the Court had jurisdiction over the claims but might be able to do so if given the opportunity. The parties are not diverse. Rather, the apparent basis for the Court's jurisdiction was that Gerson's trademark and copyright claims arise under federal law, and the Court could exercise supplemental jurisdiction over its state law claims under 28 U.S.C. § 1367(a) because they form part of the same series of related transactions. Huntington's briefing focuses on the federal claims.

In its order dismissing the original complaint, the Court noted that the terms of Huntington's employment contemplated he would be marketing and selling Gerson's copyright-protected works online, and delegated broad authority to him to do so. The FAC doesn't alter that analysis. If anything, it shows how broad and general his authority was. Huntington was hired for his purported expertise in marketing and fund-raising, given access

to passwords and financial accounts, given executive-level authority, and not subjected to supervision. The fact that Gerson's employees did not monitor Huntington or know what he was doing does not help Gerson's claims, because the pleadings show this was the arrangement they intended. Implicit in the employment agreement and the actual employment arrangement were the authority to market Gerson's materials online the way Huntington did during his employment with Gerson. This is apparent from the FAC's allegations as well as the engagement letter, and is consistent with Huntington's remarks as recorded in the interview transcript. Although Gerson now argues the agreement didn't authorize Huntington to market Gerson's products the way he did, the effect of an agreement is a legal conclusion, not a factual allegation. *See City of Santa Clara v. Watkins*, 984 F.2d 1008, 1012 (9th Cir. 1993). Gerson cannot meet the *Bell Atlantic* standard simply by alleging the conclusion that the agreement didn't authorize Huntington's marketing efforts.

Gerson also renews its argument that Huntington as unauthorized to sell its products for his own benefit, *i.e.*, by diverting the proceeds of sales to his own accounts. As the Court pointed out in its earlier order, however, this is essentially an embezzlement claim, not a trademark or copyright infringement claim. The Court cited *Tegg Corp. v. Beckstrom Elec. Co.*, 650 F. supp. 2d 413, 433 (W.D.Pa. , 2008) (citing 1 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright*, § 1.01[B][1][I]) for the principle that conversion of tangible written materials does not itself constitute copyright infringement. The same can be said for conversion of the proceeds of the sale of goods, regardless of whether they were copyright- or trademark-protected. Since Huntington was authorized to market and sell Gerson's products, at least during the term of his employment, he didn't infringe Gerson's trademarks or copyrights by doing so. The claim here is that, after conducting authorized sales of Gerson's goods, Huntington then converted the proceeds by channeling them to his own account and failing to turn the money over to Gerson. Federal trademark or copyright law doesn't supply a necessary element of this claim, so it doesn't arise under federal law; this claim could be based on sales of any products without regard to any copyright or trademark protection. *See Jones v. R.R. Donnelly & Sons Co.*, 41 U.S. 369, 376 (2004).

- 5 -

09cv1429

The FAC's claim that Huntington violated its attribution rights under copyright law fares no better. First, the broad employment agreement would allow for attributing authorship of the Registered Works, if doing so was part of a sales, promotional, or marketing strategy. If for some reason it didn't, Gerson hasn't alleged facts (as opposed to its own conclusion) to show why this was so. But more than that, the attached printout of web pages, from which Gerson infers misattribution, doesn't show "Health Matters" is identified as the Registered Works' author. The web pages merely identify the title of each work, show an illegible thumbnail, and among the information about purchasing the work, says "By: Health Matters." While this could be an authorship attribution, it appears to be an identification of the seller. In other words, the web page appears to identify "Health Matters" as the registered PayLoadz site member or account holder responsible for selling the work. If so, this was certainly permitted by the employment agreement. Huntington in his motion to dismiss urges this interpretation. (Mem. in Supp. of Mot. to Dismiss, 9:7–13.) This claim remains inadequately pleaded even after amendment.

In its opposition, Gerson argues Huntington can be liable for various types of infringement under the Copyright and Lanham Acts. But the amended FAC doesn't show Huntington was unauthorized to advertise, market, and sell Gerson's products. Rather, it strongly implies Huntington was acting as Gerson's agent for these purposes. The fact that even after an opportunity to amend, these claims are still at best doubtful means the *Bell Atlantic* standard is not met.

While Gerson alleged it had registered its copyright in the five Registered Works, and that it owns the copyright in other works (such as newsletters), it hasn't alleged it registered the copyright in those other works as is necessary before bringing suit for copyright infringement. *See Reed Elsevier, Inc. v. Muchnick*, 130 S.Ct. 1237, 1247 (2010) (citing 17 U.S.C. § 411(a)). This does not affect its trademark claims, however, because unauthorized sales of any goods using Gerson's mark would be an infringement.

/ / /

/ / /

Gerson has also alleged it licenses some works from Charlotte Gerson. She has not joined in this action, however, and Gerson cannot raise any claims she may have.

Because Gerson has failed to amend these claims successfully, they will be dismissed without leave to amend. *See Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981) (affirming district court's dismissal of complaint with prejudice after plaintiff failed to amend successfully).

Gerson has, however, alleged that Huntington continued selling its Registered Works and other works using Gerson's trademark after Huntington's employment ended. Specifically, Gerson alleges

> that Huntington has been, and is currently, infringing the Registered Works in violation of 17 U.S.C. §§ 101, et seq., through unauthorized production and substantial use of the Registered Works and/or derivative works on an Internet website promoting Gerson's products and services and in other advertising and marketing efforts and by participating in and furthering such infringing acts and/or parking in the proceeds from such infringing acts.

(FAC, ¶ 61; *see also* ¶ 40.) This paragraph was included in the original complaint as well, but in opposing the initial motion to dismiss, Gerson backed off from these allegations, implying the conduct giving rise to its claims occurred only during employment. (Opp'n to Mot. to Dismiss (Docket no. 7), § IV.)

Huntington would presumably have a reasonable amount of time to stop selling Gerson's products and using its trademark after the employment relationship ended. But if as the FAC alleges he continued selling instead of promptly stopping after his authorization was revoked, he would be liable for trademark infringement as to all products, and copyright infringement as to the Registered Works. Assuming Gerson can establish these limited claims, the Court would have supplemental jurisdiction over the related state law claims. To this limited extent, the claims arising under the Copyright Act and Lanham Act are still viable.

Huntington, in his motion to dismiss, points out that while the original complaint alleged his employment terminated on February 10, 2009, the FAC alleged it terminated February 10, 2008. He argues the original date was correct, that the 2008 termination date may be an error, and that this puts all infringing acts within the period of his employment.

The FAC includes inconsistent allegations of dates, compounding the problem. (*See, e.g.*, FAC, ¶ 18 (alleging Huntington approached Anita Wilson with a marketing idea in the fall of 2008, then began carrying it out in December, 2007).) But the interview transcript attached to the FAC supports Huntington's position. (FAC, Ex. F at 1 (identifying interview date as February 5, 2009 and indicating Huntington was then employed as Resource Development Specialist at Gerson).) Even accepting the later termination date, however, if Huntington sold Registered Works or used the Gerson trademark to sell goods without authorization after termination, he could be liable.

Huntington also argues that when his employment was terminated, he was immediately relieved of all computer access and had no further dealings with Gerson except through this litigation. (Mem. in Supp. of Mot. to Dismiss, 2:13–21, 10:13–20.) But the Court at this stage must accept Gerson's factual allegations as true. Because Gerson has alleged he was still engaged in selling their goods and using their mark, at least through the date of the filing of the FAC, these claims remain viable.

In its opposition to the motion to dismiss, Gerson didn't address Huntington's arguments that his involvement with Gerson's products and trademark ceased when his employment did. It may be that Gerson isn't sure even now that Huntington sold its products or used its trademark after his employment ended. Regardless, this issue cannot be resolved at the pleading stage, and must await a motion for summary judgment.

That said, paragraph 61 is a very thin reed on which the Court's jurisdiction over all claims now rests. Any claims arising from Huntington's anticipated future infringement would be unripe in the absence of any imminent threat. If Huntington's arguments are correct and he didn't infringe Gerson's trademark or copyrights after his employment ended, the Court has no basis for exercising jurisdiction over any claims.

Because Gerson has made no real effort to defend the allegations embodied in paragraphs 40 and 61 of the FAC, the Court considers it prudent to admonish Gerson that if these claims have no evidentiary basis and if Gerson does not in good faith believe they will have evidentiary support after a reasonable opportunity for discovery, they should be

abandoned immediately. *See* Fed. R. Civ. P. 11(b)(3). If Gerson abandons these claims, or if Huntington obtains summary judgment on these claims, the remaining state claims will also be dismissed. *See United Mine Workers of America v. Gibbs*, 383 U.S.715, 726 (1966).

**IV.   Conclusion and Order**

For these reasons, Gerson's Copyright Act and Lanham claims for alleged infringement during Huntington's employment with Gerson are **DISMISSED WITHOUT LEAVE TO AMEND**. Gerson's claims for infringement of copyright in any works other than the five Registered Works are also **DISMISSED WITHOUT LEAVE TO AMEND**. The motion to dismiss is **DENIED** as to the remaining claims. The request for attorney's fees is likewise **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

DATED: March 10, 2011

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge